## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AAMCO TRANSMISSIONS, INC.<br>201 Gibraltar Road, Suite 150<br>Horsham, PA 19044<br>Plaintiff, | Case No.: 13-cv-2246 |
| v. | **DEFENDANT'S ANSWER AND<br>COUNTERCLAIMS** |
| ISMAIL S. LATIF<br>411 Suncrest Towne Centre Drive<br>Morgantown, WV 26505<br>Defendant. | |

In answering the claims asserted by Plaintiff AAMCO Transmissions, Inc. (hereinafter "AAMCO" or "Plaintiff") in its Complaint ("Complaint"), Ismail S. Latif (hereinafter "Latif" or "Defendant") denies each and every allegation of the Complaint, except as hereinafter specifically admitted, qualified, or otherwise answered.  Defendant responds to the individually numbered paragraphs of the Complaint as set forth below:

1.      Defendant is without sufficient information to admit or deny the allegations appearing in paragraph 1 of the Complaint and therefore denies them.

2.      Defendant admits the allegations appearing in paragraph 2 of the Complaint.

3.      With respect to paragraph 3 of the Complaint, the allegations appearing in this paragraph largely set forth alleged legal conclusions regarding jurisdiction. To the extent a response is deemed necessary, Defendant denies the allegations.

4.      With respect to paragraph 4 of the Complaint, the allegations appearing in this paragraph require no response as it seeks to set forth alleged legal conclusions

regarding venue. To the extent a response is deemed necessary, Defendant denies the allegations.

5.      Defendant is without sufficient information to admit or deny the allegations appearing in paragraph 5 of the Complaint and therefore denies them.

6.      Defendant is without sufficient information to admit or deny the allegations appearing in paragraph 6 of the Complaint and therefore denies them.

7.      Defendant is without sufficient information to admit or deny the allegations appearing in paragraph 7 of the Complaint and therefore denies them.

8.      Defendant is without sufficient information to admit or deny the allegations appearing in paragraph 8 of the Complaint and therefore denies them.

9.      Defendant is without sufficient information to admit or deny the allegations appearing in paragraph 9 of the Complaint and therefore denies them.

10.     Defendant admits the allegations appearing in paragraph 10 of the Complaint to the effect that on January 10, 2007 Defendant entered into a written franchise agreement, the terms of which speak for themselves.

11.     In answer to the allegations appearing in paragraph 11 of the Complaint, Defendant states that he did receive training during December of 2010, but denies the remaining allegation appearing in paragraph 11 of the Complaint. Defendant avers that the franchise began to fully operate during February of 2012, more than five years after the franchise agreement was signed.

12.     Defendant admits the allegations appearing in paragraph 12 of the Complaint.

13.     In answer to the allegations appearing in paragraph 13 of the Complaint, Defendant states that the franchise agreement speaks for itself.

14.     In answer to the allegations appearing in paragraph 14 of the Complaint, Defendant states the franchise agreement speaks for itself.

15.     In answer to the allegations appearing in paragraph 15 of the Complaint, Defendant states the franchise agreement speaks for itself.

16.     Defendant is without sufficient information to admit or deny the allegations appearing in paragraph 16 of the Complaint and therefore denies them.

17.     Defendant is without sufficient information to admit or deny the allegations appearing in paragraph 17 of the Complaint and therefore denies them.

18.     Defendant denies the allegations appearing in paragraph 18 of the Complaint.

19.     In answer to the allegations appearing in paragraph 19 of the Complaint, Defendant states the franchise agreement speaks for itself.

20.     In answer to the allegations appearing in paragraph 20 of the Complaint, Defendant states the franchise agreement speaks for itself.

21.     In answer to the allegations appearing in paragraph 21 of the Complaint, Defendant states the letter speaks for itself and that Defendant denies the allegations contained in the letter.

22.     In answer to the allegations appearing in paragraph 22 of the Complaint, Defendant states the letter speaks for itself.  Defendant avers that he communicated with

Plaintiff via email offering to visit with Plaintiff's representatives via telephone but his offer was rejected by Plaintiff.

23.     In answer to the allegations appearing in paragraph 23 of the Complaint, Defendant states the letter speaks for itself and that Defendant expressly denies the allegations contained in the letter.

24.     In answer to the allegations appearing in paragraph 24 of the Complaint, Defendant states the letter speaks for itself.

25.     In answer to the allegations appearing in paragraph 25 of the Complaint, Defendant states the letter speaks for itself.

26.     Defendant denies the allegations appearing in paragraph 26 of the Complaint and avers that Plaintiff is still collecting its fees, royalty and otherwise.

27.     With respect to the allegations appearing in paragraphs 27 through 70 of the Complaint, they consist largely of legal conclusions that do not require a response.  To the extent a response is required, Defendant denies them.

<u>AFFIRMATIVE DEFENSES</u>

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     The non-compete agreement claims set forth in the Complaint are barred pursuant to applicable law prohibiting the enforcement of non-compete agreements that are overly broad, are not reasonable in scope and/or duration, which do not protect a legitimate interest, or which restrict common callings.

3.     The claims set forth in the Complaint are barred, in whole or in part, by the doctrine of laches.

4.      Plaintiff is not entitled to injunctive relief because Plaintiff cannot satisfy the elements required for injunctive relief.

5.      Plaintiff has waived and/or is estopped from asserting the claims set forth in the Complaint.

6.      Plaintiff's claims are inconsistent with applicable public policy.

7.      Plaintiff's claims are subject to dismissal based on Plaintiff's failure to comply with the rules of sale governing franchises as promulgated by the Federal Trade Commission.

8.      Plaintiff's claims under the contract are unenforceable to the extent that Defendant rescinds or deems void the underlying contract.

9.      Plaintiff breached the implied covenant of good faith and fair dealing such that Plaintiff's claims must be dismissed.

10.     Defendant's performance was excused based on Plaintiff's failure to make proper pre-sale franchise disclosures to Defendant.

11.     Defendant's conduct was justified.

12.     Defendant's performance was excused based on Plaintiff's prior material breaches of contract.

13.     Plaintiff acquiesced in the conduct complained of such that Plaintiff's claims should be dismissed.

14.     Plaintiff's action for injunctive relief and declaratory relief should be dismissed as unripe.

15.     Plaintiff's damages, if any, were not proximately caused by the Defendant.

16.     Plaintiff has failed to assert special damages and therefore cannot assert its claims.

17.     The claimed damages and/or wrongful conduct was caused by third parties.

18.     Defendant reserves the right, after further discovery, to amend this answer to add additional affirmative defenses supported by the facts, and a failure to include all such defenses in this answer shall not be deemed to waive any right to further amend.

## COUNTERCLAIMS

1.     Latif is a registered professional engineer and has worked for the State of West Virginia Division of Highways as a highway engineer for some 20 years designing, among other things, bridges.

2.     During 2007, he began investigating various franchise concepts.  Latif did not want to quit his job as an engineer, so it was important for him that whatever franchise he purchased would provide him with the flexibility to continue working as an absentee owner and to have a manager operate the business on a day to day basis.

3.     Ultimately, Latif spoke to ATI's representative and discussed with him whether an AAMCO-branded franchise would be a good fit for Latif.  Latif was told by ATI's representative that AAMCO is the world's largest chain of transmission specialists and that the AAMCO brand has approximately 900 automotive centers. Moreover, ATI's representative told Latif that he could operate his franchise as an absentee owner and continue his engineering job on a full-time basis.

4.     Based upon these and other representations, Latif agreed to become an ATI franchisee. (*See* Compl. Exh. A).

6

5.      The Agreement was executed on December 10, 2007 by and between AAMCO Transmissions, Inc. and Ismail S. Latif.  (Compl. Exh. A. pgs. 1 and 21).  Latif is defined as being the franchisee. *Id*.

6.      During 2008 and 2009, the parties' real estate search occurred. The parties could not locate a good location for the center.

7.      Then, during 2010, Latif found a location in Morgantown, West Virginia, which is where the Center was constructed.  The land cost Latif $750,000, and the total project cost came out to be more than $2,100,000.00, which is ten times the cost of a normal AAMCO-branded center.

8.      This is because the Center is the first "new concept" center for the AAMCO system. The center features eight service bays including two "drive-through" quick service lanes for engine checks, oil changes, tire rotation and other quick services. The Center offers truly "total" car care – including tires and alignments. The Center has become a fixture in the college town where area motorists visit for all things automotive.

9.      As reported in one particular news publication, ATI's Vice President of Marketing Support Jack Bachinsky stated "This is our new prototype center. [] As we go across the country now to look at new opportunities, this is the model we will use."

10.     Latif was similarly excited.  Both because he thought the concept would work out well and due to the fact that he had put his life's savings and everything he could borrow into the Center.

11.     During February of 2012, the Center opened for business to the public. Although Latif had planned on being an absentee owner, he found himself at the Center

at least five times a week for several hours a day. Indeed, business was brisk in that the Center was serving, on average, 150 vehicles per week (and since its opening, it has serviced approximately 9,000 vehicles).

12.     It came as a shock to Latif then, when, in a letter dated April 3, 2013, from ATI's William Jameson to Latif, ATI stated that Latif was in material breach of the Agreement "for failure to deal honestly with customers and ATI" ("Default Letter"). (Pls. Compl. Exh. B.) The Default Letter outlines four customers whom were charged for services not provided:

> As a result of complaints received from other AAMCO Transmission Centers, ATI conducted an investigation which documents that on more than one occasion, your AAMCO Transmission Center located in Morgantown, West Virginia (the "Center") fraudulently sold repairs to customers that were not performed.
> ***
> In January 2013, the AAMCO Transmission Center located in Egg Harbor, NJ reported that it had been presented with a 2004 Nissan Maxima originating from your Center with a repair order reflecting charges for a new exhaust system and used subframe installation. The Egg Harbor center reported, however, that it did not appear that any of this work had ever been performed. In response, ATI's field investigator, Joe Riccardi, travelled to the Egg Harbor center, examined the vehicle in question and confirmed that none of the work had been performed. Mr. Riccardi's forensic examination was fully documented.
>
> In February of 2013, the AAMCO Transmission Center in Reading Pennsylvania reported that it had been presented with a 2007 Chevy Silverado originating from your Center. Records show that the warranty company, Cars Warranty, paid your Center for the installation of a used transmission along with a rebuilt torque converter and rebuilt transfer case. When the Reading center inspected the vehicle, however, it did not appear that the repairs had been performed. Mr. Riccardi was again sent to perform a forensic inspection of the vehicle. Upon a fully documented inspection, Mr. Riccardi confirmed that neither the torque converter nor the transfer case had ever been replaced.
>
> In March of 2013, during a routine visit to your Center from ATI's Franchise Support Manager, Ron Klemm, it was discovered that the vehicle of customer, Robert Rietzle, had been on the Center premises for an unacceptably long period of time and that the customer appeared to be getting the "run around". The customer's vehicle was towed to a nearby AAMCO center for immediate assistance. The AAMCO Transmission Center in Washington, Pennsylvania reported to ATI that it had performed a minor adjustment to correct the drivability problem with the vehicle but noticed that the transmission which was supposedly rebuilt by your Center appeared instead to be a used unit. There was no indication that the unit had ever been rebuilt. Again, Mr. Riccardi was sent to perform a forensic investigation and, after a careful and documented examination, confirmed that the unit was never rebuilt.

Also in March of 2013, ATI received a report from another AAMCO Transmission Center concerning one of the vehicles supposedly repaired by your Center. The AAMCO Transmission Center in Pittsburgh Pennsylvania reported that it had been authorized by your Center to perform warranty repairs on a transmission which your Center claims to have rebuilt for a 2005 Ford Explorer. Mr. Riccardi interviewed the builder in Pittsburgh who attested that the only part that he observed as being replaced by your Center was a torque converter. It was this builder's observation that your Center had not rebuilt the transmission. Mr. Riccardi examined the parts removed by the Pittsburgh center and agreed with the builder's conclusion.

Finally, in light of the foregoing history of repairs supposedly performed by your Center, Mr. Riccardi met with and interviewed your former employee, Adam Munsted, who previously served as your Center's service manager. Mr. Munsted, during a recorded interview, admitted to Mr. Riccardi that it was a common practice, encouraged by you personally, to recommend unneeded services and to use junkyard components misrepresented to be rebuilt or new.

13. Latif was left breathless and dumbfounded by the Default Letter. Latif immediately called and emailed ATI to discuss the matter. Before Latif even had a thorough opportunity to review his Center's records, however, ATI demanded that Latif immediately travel to ATI's headquarters to be interrogated by its seasoned executives and lawyers.

14. Latif was in Minneapolis, Minnesota and could not immediately travel to ATI's headquarters in Pennsylvania. As such, Latif declined, and requested time to review the Center's records, to conduct his own investigation, and to visit with ATI's representatives via telephone in the meantime.

15. ATI was seemingly incensed by Latif's reasonable request and, in what appears to be a knee-jerk response, in a letter dated April 16, 2013, from ATI's William Jameson to Latif, ATI purports to immediately terminate Latif's franchise for Latif's failure to "deal fairly and honestly with AAMCO and with each customer":

ATI hereby terminates your Franchise Agreement with ATI dated December 10, 2007. You have breached Paragraph 8(a) of the Franchise Agreement which provides that you must at all times "deal fairly and honestly with AAMCO and with each customer". Pursuant to Paragraph 19.1(d)

of the Franchise Agreement, this breach is non-curable and, as such, this termination notice is "effective upon receipt by Franchisee".

The Agreement's paragraph 8(a) states:

Certain Obligations of Franchisee. In order to maintain the high quality and uniform standards associated with the System and to protect its good will and reputation, Franchisee agrees to:

(a) deal fairly and honestly with AAMCO and with each customer, and that he will render prompt, workmanlike, courteous and willing service in his Center

(Pls. Compl. Exh. D).

16.     To date, Latif continues to operate the Center and serve the public and ATI continues to debit Latif's bank accounts for royalty and other payments. In other words, the parties' continue to carry on in their respective roles as franchisee and franchisor.

17.     Additionally, Latif has now had an opportunity to review the Center's invoices relating to the four vehicles. While Latif is not certain that the following four vehicles are the ones identified in ATI's Default Letter (because, among other things, the Default Letter is nondescript and is premised upon hearsay), Latif believes the following vehicles are the ones referenced in ATI's Default Letter:

| Car Description | Date of Service | Wrongful Conduct Alleged by ATI | Services Performed According to Repair Order | Amount Center was Paid by Customer for Parts and Services |
|---|---|---|---|---|
| 2007 Chevrolet<br><br>RO# 107408 | 10/20/12 | Center was paid for: (a) "used transmission"; (b) "rebuilt torque converter"; and (c) "rebuilt transfer case" but "it did not appear that the repairs had been performed" (Default Letter pg. 1, ¶4). | Installation by Center of: (a) transmission supplied by customer's warranty company; (b) a reconditioned torque converter; and (c) a transfer case rebuilt by Vandergrift Auto, a third-party contractor | $1,500 |
| 2004 Nissan<br><br>RO#108046 | 11/9/12 | Center was paid for: (a) "a new exhaust system"; and (b) "a used subframe installation" (Default | Repaired, welded and replaced a part to the existing exhaust | $423.97 |

| | | Letter pg. 1, ¶3). | | |
|---|---|---|---|---|
| 1998 Nissan<br><br>RO#108219 | 11/14/12 | Center was paid for "transmission which was supposedly rebuilt by your Center appeared instead to be a used unit" (Default Letter pg. 2, ¶1). | Installation by Center of a reused unit demonstrated by $985 discount | $2,120.01 |
| 2005 Ford<br><br>RO#109881 | 1/12/13 | Center was paid for a rebuilt transmission (Default Letter pg. 2, ¶2). | Installation by Center of a transmission rebuilt by Vandergrift Auto, a third-party contractor | $2,274.91 |

18.     As the chart set forth above demonstrates, the four vehicles at issue in this dispute involve total parts and service sales of $6,318.89 and no fraud or dishonest dealing occurred on the part of Latif.

19.     Ismail S. Latif emphatically denies that he defrauded and otherwise failed to deal honestly with customers and/or ATI. Indeed, Latif did not engage in the following fraudulent and deceptive practices nor did he encourage such practices to occur at the Center: (a) selling customers rebuilt transmissions which in fact were not rebuilt; (b) selling a customer a rebuilt torque converter that was not installed; (c) selling a customer a replacement uniframe that that was never replaced; (d) selling a customer a transfer case that was never replaced or rebuilt; (e) selling a customer a replacement exhaust system that was never replaced; (f) recommending unnecessary repairs to customers; (g) selling unnecessary repairs to customers; (h) representing to customers that work was performed that was not performed; and/or (i) representing to customers that parts were replaced that were not replaced.

11

## COUNTERCLAIM COUNT I—BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

20.     Latif restates and realleges each of the foregoing allegations.

21.     In addition to the express terms found in the parties' Agreement, the implied covenant of good faith and fair dealing requires that ATI act reasonably in the performance of its duties and in the exercise of its discretion afforded it in the parties' Agreement.

22.     ATI has breached its express contractual duties and the implied covenant of good faith and fair dealing to Latif by violating the terms of the parties' Agreement and Latif's reasonable expectations by purportedly wrongfully terminating his franchise, by not performing a satisfactory investigation prior to terminating Latif, and by ATI's substandard performance, support, and assistance as prescribed under the parties' Agreement.

23.     While the precise amount of Latif's damages cannot now be determined with precision, such damages are in excess of $75,000. A more precise amount to which Latif is entitled will be presented at a trial on the merits of this matter.

## COUNTERCLAIM COUNT II—DECLARATORY JUDGMENT

24.     Latif restates and realleges each of the foregoing allegations.

25.     Pursuant to 28 U.S.C. § 2201, this Court has jurisdiction to determine disputes between ATI and Latif concerning the validity, operation and purported termination of the Agreement.

26.     An actual controversy exists between ATI and Latif as to whether Latif and/or ATI is in default under the Agreement and as to the purported termination of the Agreement. Latif has performed all of his obligations under the Agreement and has not negligently or willfully caused any damage to ATI.

27.     Yet, ATI improperly determined that Latif is in violation of his obligations under the Agreement and purported to terminate Latif's Agreement.

28.     Accordingly, Latif requests a declaration by this Court that he did not violate any term of the Agreement and is therefore entitled to continue enjoying his AAMCO-branded franchise.

WHEREFORE, Latif respectfully requests that this Court enter judgment:

A.  Dismissing ATI's claims with prejudice;

B.  Declaring Latif to be in good standing as an ATI franchisee;

C.  Entering judgment in favor of Latif and awarding damages against ATI; and/or

D.  Awarding attorneys' fees, costs and such other relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Latif demands a trial by jury on all counts so triable.

GOLDSTEIN, PC

Dated: June 12, 2013

By  /s Jeffrey Goldstein
Jeffrey M. Goldstein, Esq.
jgoldstein@goldlawgroup.com
1629 K St. N.W. Suite 300
Washington, DC 20006
Telephone:  (202) 293-3947

Attorney for Defendant